THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **3:17-CR-189** |
| v. | : | **(RELATED CASE 3:19-CV-01065)** |
| | : | **(JUDGE MARIANI)** |
| HITESHKUMAR PATEL, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On November 9, 2017, Hiteshkumar Patel pleaded guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).  (Docs. 18, 25.)  Presently before the Court is Patel's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (Doc. 46.)  For the reasons stated below, the Court will deny the single claim that remains unresolved in Patel's Motion.

### II. STATEMENT OF FACTS

The following abbreviated summary of the factual background in this case derives from the Presentence Investigation Report ("PSR") (Doc. 39):

> Beginning in September 2015 and continuing through May 2016, Hiteshkumar Patel was involved in schemes to defraud individuals through an IRS conspiracy and on-line loan conspiracy.  The defendant was an organizer involved with others who falsely represented themselves as IRS agents, or individuals associated with illegitimate on-line loan businesses.  Hiteshkumar Patel facilitated the schemes by either using his personal identity, stolen identities, or identities of co-conspirators.

As part of the IRS scheme, Hiteshkumar Patel and his co-conspirators contacted individuals by telephone and falsely claimed to represent IRS authorities.  Victims were told that they owed money to the IRS and were threatened with arrest, fines, and imprisonment unless payments were made. Hiteshkumar Patel and his co-conspirators directed victims to send payments by U.S. Mail or via a money transfer service including, Western Union, MoneyGram, [and] RIA (Walmart to Walmart) directly to the defendant or one of his co-conspirators.  The defendant and/or his co-conspirators opened U.S. Post Office boxes in the Middle District of Pennsylvania and elsewhere to receive payments from the victims.

. . .

In connection with the on-line loan scheme, Hiteshkumar Patel and his co-conspirators created illegitimate hoax websites that spoofed certain legitimate on-line loan websites.  Their intent was to mislead Internet users into believing that the illegitimate loan sites were real.  Some of the illegitimate loan sites had very similar designs and URLs as the legitimate loan sites.

Some of the victims of the on-line loan fraud scheme were instructed that in order to receive a quick loan, they had to pay various fees associated with the processing of the application, such as fees for expediting the loan and insurance.  Some victims of the loan fraud were also told that they had to settle IRS debt before their quick loan applications could be processed.

. . .

As a result of the schemes, at least 629 victims within 18 states have been identified by postal inspectors.  The Government estimates that victims have paid in excess of $1,000,000 either directly to Hiteshkumar Patel via the U.S. Mail, MoneyGram, Western Union, and/or RIA, or to one of the numerous "helpers" he recruited off the street to assist him in the frauds.  Approximately ten of the "helpers" have been identified and were interviewed by agents.

(PSR ¶¶ 6–13.)

U.S. Postal agents arrested Patel on May 18, 2016, and he soon thereafter waived his Miranda rights and provided a statement to police.  (*Id.* ¶ 15.)  Patel explained that six

"bosses" from a call center in India directed the scheme, and he described the payment structure as it affected him and his "runners." (*Id.*)

Patel pleaded guilty to Counts 1 and 20 of the Indictment on November 9, 2017. (Plea Hr'g Tr., Doc. 31.)  The maximum term of imprisonment was twenty years for Count 1 and two years for Count 20.  (PSR ¶ 57.)  The term of imprisonment for Count 20 was required to be consecutive to that imposed on Count 1.  (*Id.* ¶ 58.)  According to the PSR, "[b]ased on his total offense level of 31 and a criminal history category of III, the guideline imprisonment range [was] 135 to 168 months." (*Id.* ¶ 59.)

This Court sentenced Patel on August 9, 2018.  (Sent'g Hr'g Tr., Doc. 38.)  At the sentencing hearing, the Court read selections from the victim impact statements submitted to the Court to demonstrate the hardships the Defendant caused his victims.  (*See id.* at 21–36.)  The Court summarized the victims' statements as follows:

> Each and every one of these people lost savings.  One in particular lost her savings with no hope of financial recovery.  The list goes on.  The list goes on. Telephone schemes and online scams such as those this defendant has perpetrated have become a scourge of our society and a trap for the [unwary]. That I think is a statement that is beyond serious dispute.
>
> While it's possible to quantify the financial loss that each of these individuals suffered at the hands of the defendant, I believe it's impossible to quantify the emotional and psychological damage that you have inflicted, Mr. Patel, or each and every one of these individuals who not only endured your threats and intimidation but thereafter suffered the humiliation of realizing they had been fleeced by a man without a conscience who did not care how much suffering he inflicted or on whom.

(*Id.* at 31–32.) Ultimately, the Court varied upwards from the guideline sentence, and

explained the reasons for doing so as follows:

> So for these reasons in my application of the 3553(a) factors, I find that just
> punishment in this case requires an upward variance from the guideline
> sentence. And in addition to the reasons I have just given, I will give you these
> additional reasons: One, the length of time you perpetrated this fraudulent
> scheme; the number of persons who suffered from it, at least 629 individuals;
> the amount of money of which these individuals was defrauded; the emotional
> and psychological pain and anguish and distress each of these victims no doubt
> suffered in the manner in which they were treated by you and the manner in
> which they were threatened and browbeat and lied to and bullied and deceived
> and the damage each of them suffered warrants a sentence above the
> guidelines to reflect the extreme seriousness of this offense and to promote
> respect for the law—specifically to promote respect for the law that abuse of the
> telephone and abuse of online communication facilities particularly with respect
> to the unsophisticated, to the elderly and the naive will be dealt with in the most
> severe fashion in the United States of America.
>
> Lastly, just punishment requires for the damage that you have inflicted a
> sentence above the guidelines not only for the above reasons but to afford
> adequate deterrence to criminal conduct by you and by any others who would
> engage in the predatory activity that you engaged in because you, sir, are a
> predator without conscience. I find that your conduct was undertaken over a
> substantial period of time and inflicted harm on hundreds of persons which truly
> can't be remedied and it was so reprehensible as to be lacking in any basic
> human decency, and I will further note there are no mitigating factors that I can
> discern that would cause me to arrive at a different conclusion.

(*Id.* at 32–33.)

The Court "var[ied] upward by two levels and sentence[d] the defendant to a term of

imprisonment of 210 months on count one with the additional two years required under

count 20 for a total of 234 months." (*Id.* at 33.) The Court also imposed restitution in the

amount of $896,112.33 and a special assessment of $100 on each count. (*Id.* at 34.)

Patel did not file a direct appeal.  On August 19, 2019, Patel filed the instant Motion

pursuant to 28 U.S.C. § 2255 (Doc. 46) and later filed a brief in support of his Motion (Doc.

51).[1]  The Government timely filed a brief in opposition (Doc. 57), and Patel then filed a

reply brief (Doc. 70).

## III. RESOLUTION OF FIRST CLAIM

Patel's Motion seeks relief on two grounds.  The first—that his counsel rendered

ineffective assistance by failing to file a Notice of Appeal on his behalf—has already been

resolved.  On September 19, 2022, this Court issued an Order granting Patel's § 2255

Motion only to the extent that his right to appeal his conviction and sentence was reinstated.

(Doc. 81.)  The Court thereafter entered an amended judgment reflecting the reinstatement

of his appeal rights.  (Doc. 82.)  Patel's second ineffective assistance of counsel claim,

attacking his counsel's performance with respect to his guilty plea, was "held in abeyance

pending resolution by the United States Court of Appeals for the Third Circuit of such appeal

as Patel may file."  (Doc. 81 at 4.)

Patel filed a Notice of Appeal on November 14, 2022.  (Doc. 83.)  The Government

filed a Motion to Dismiss the Appeal on the grounds that (1) Patel's plea agreement

---

[1] Patel's initial "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a
Person in Federal Custody" (Doc. 43), filed on June 24, 2019, is not before the Court.  In response to the
Court's issuance of a *Miller* notice on August 8, 2019, Patel filed a second § 2255 Motion (Doc. 46), and
thereafter filed two briefs in support.  (Docs. 48, 51.)  The two briefs in support appear to be the same
except for the inclusion of three exhibits attached to the second-filed brief (Doc. 51).  As such, the Court
considers Patel's second-filed § 2255 Motion (Doc. 46) and his second-filed brief in support (Doc. 51) to be
Patel's all-inclusive § 2255 motion.

included an appeal waiver and (2) Patel filed his Notice of Appeal outside of the deadline prescribed by Federal Rule of Appellate Procedure 4(b)(1)(A). On January 18, 2023, the Third Circuit dismissed Patel's appeal pursuant to Federal Rule of Appellate Procedure 42(b). Patel's second ineffective assistance of counsel claim is therefore ripe for disposition.

## IV. STANDARD OF REVIEW

### a. 28 U.S.C. § 2255

A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A federal prisoner may also file a § 2255 motion within one year from "[t]he date on which the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). A § 2255 motion may attack a federal prisoner's sentence on any of the following grounds: (1) the judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or otherwise open to collateral attack; or (3) there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. 28 U.S.C. § 2255(b); *see also*, 28 U.S.C. § 2255(a).

6

Section 2255 does not, however, afford a remedy for all errors that may have been made at trial or sentencing. *United States v. Essing*, 10 F.3d 968, 977 n.25 (3d Cir. 1993). Rather, § 2255 permits relief for an error of law or fact constituting a "fundamental defect which inherently results in complete miscarriage of justice." *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (citing *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Relief is available under § 2255 only in exceptional circumstances: when the claimed error of law is "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). If the court determines that the petitioner is entitled to relief under § 2255, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *See* 28 U.S.C. § 2255(b).

Section 2255 also directs that, in some instances, the court "shall" hold an evidentiary hearing.

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). In *United States v. Booth*, the Court of Appeals for the Third Circuit explained the court's discretion in these matters:

> Although a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255,

our caselaw has imposed limitations on the exercise of that discretion. In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989). *See also* R. Governing § 2255 Cases R. 4(b). The district court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.* We have characterized this standard as creating a "reasonably low threshold for habeas petitioners to meet." [*United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005)] (quoting *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

432 F.3d 542, 545–46 (3d Cir. 2005). Generally, the petitioner bears the burden of proof in

§ 2255 proceedings. *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are properly raised on collateral review

rather than on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To

succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part

test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must

demonstrate "(1) that counsel's performance was deficient, that is, it fell below an objective

standard of reasonableness, and (2) that counsel's deficient performance prejudiced his

client." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at

689–92). The petitioner bears the burden of establishing that counsel's performance

prejudiced the defense. *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002).

## V. ANALYSIS

Patel's remaining claim is that his counsel provided ineffective assistance with respect to the entry of his guilty plea. To comport with the Fifth Amendment, a defendant's plea must be voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). To satisfy *Strickland*'s "objective standard of reasonableness" with respect to a plea, 466 U.S. at 688, an attorney must "give a defendant enough information 'to make a reasonably informed decision whether to accept a plea offer.'" *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, 571 U.S. 1224, 134 S. Ct. 1340, 188 L. Ed. 2d 346 (2014). To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The Court notes further that, because the need for finality applies with "'special force with respect to convictions based on guilty pleas,'" collateral review of such convictions is available only in "strictly limited" circumstances. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

Patel presents various arguments to support his claim.  He argues primarily that his counsel provided ineffective assistance "by misleading [him] and third party witnesses that the guilty plea entered entailed a sentence of 'no more' than 10-years maximum leading to the entering of an unknowing, involuntary, and invalid plea and waiver."  (Doc. 51 at 9.) According to Patel, had he

> been made aware that the [G]overnment was not in agreeance to a sentence of 30–46 months, and ten years at maxi[m]um; or that the guilty plea would preclude any challenge to the number of victims or loss calculations, he never would have pled guilty nor [waived] of his rights, and he would have elected to proceed forward with trial and maintained his innocence to all charges.

(*Id.* at 12.)

Patel also argues that "counsel coerced, [misled], and scared Petitioner into pleading guilty when he told Petitioner, if he did not agree to accept the plea of 30–46 months, ten years at maxi[m]um, and proceeded to trial and were found guilty, his certain sentence would be fifteen-to-20 years on each count, followed by consecutive 2-year[] sentences on each Count for Aggravated Identify Theft."  (*Id.* at 11–12.)  Finally, Patel argues that counsel "fail[ed] to adequately discuss[] the plea waiver" with him, and that he was not informed that his sentence could include restitution.  (*Id.* at 12–13.)

Every aspect of Patel's claim is conclusively contradicted by the record, which establishes that his counsel gave him "enough information 'to make a reasonably informed decision'" to accept his plea. *Shotts*, 724 F.3d at 376 (quoting *Day*, 969 F.2d at 43).  He was informed multiple times of the consequences of pleading guilty, and he acknowledged

on the record that he had discussed those consequences with counsel and understood

them.  Patel was informed of the facts on which his plea was based, and agreed that the

Government could prove those facts beyond a reasonable doubt had he chosen to go to

trial.  He repeatedly confirmed on the record that he had not been threatened or otherwise

improperly induced to enter his plea.  Finally, he was informed of his sentencing exposure,

and that sentencing was wholly within the Court's discretion; at most, his counsel

erroneously predicted how the Court would exercise that discretion.  In summary, Patel fails

to satisfy the standard set forth in *Strickland*.

### A. Plea Agreement and Acknowledgement of Rights

Patel was initially informed in writing of the consequences of entering his guilty plea.

His plea agreement recited the minimum and maximum possible terms of imprisonment and

stated plainly that the Court was free to impose up to the maximum sentence:

> Court Not Bound by Terms.  The defendant understands that the court is not a
> party to and is not bound by this Agreement, or any recommendations made
> by the parties.  Thus the court is free to impose upon the defendant any
> sentence up to and including the maximum sentence of imprisonment for 22
> years, a fine of $500,000, a maximum term of supervised release of up to 3
> years, which shall be served at the conclusion of and in addition to any term of
> imprisonment, the costs of prosecution, denial of certain federal benefits, and
> assessments totaling $200.

(Doc. 18 at 23.)  Thus, any implication that he was unaware he could receive up to the

maximum sentence is meritless.  Patel's plea agreement also informed him of the Court's

duty "to order full restitution to all victims for the losses those victims have suffered as a

11

result of the defendant's conduct." (*Id.* at 16–19.)  Thus, any claim that he was unaware the

Court could order him to pay restitution is meritless.

Nor can Patel successfully argue that his attorney failed to discuss with him the

effects of his appeal waiver or his possible defenses, had he chosen to proceed to trial.  By

signing his plea, Patel affirmed that he had "discussed this case and this plea agreement in

detail" with his attorney, and that he was "satisfied with the legal services and advice" his

attorney provided.  (*Id.* at 30–31.)  He confirmed that his counsel had

> advised [him] of [his] Constitutional and other trial and appeal rights, the nature
> of the charges, the elements of the offenses the United States would have to
> prove at trial, the evidence the United States would present at such trial,
> possible defenses, the advisory Sentencing Guidelines and other aspects of
> sentencing, potential losses of civil rights and privileges, and other potential
> consequences of pleading guilty in this case.

(*Id.* at 30.)  The plea agreement also specifically explains Patel's direct appeal rights and

provides that by entering this guilty plea, he "knowingly waives the right to appeal the

conviction and sentence."  (*Id.* at 27.)

Finally, by signing, Patel "certifie[d] that [his] plea is knowing and voluntary, and is

not the result of force or threats or promises apart from those promises set forth in this

written Plea Agreement."  (*Id.* at 30.)  Such certification discredits any claim that he was

coerced into pleading guilty, or that he was acting on the basis of an off-the-record promise

of a sentence less than ten years.

Patel signed an additional document titled "Acknowledgement of Rights Waived by

Guilty Plea."  (Doc. 24 ("Acknowledgement").)  This document, *inter alia*, summarizes the

rights Patel waived by pleading guilty and reiterates his maximum sentencing exposure.  (*Id.*

at 1.)  By signing, Patel agreed, "I understand that in determining my sentence, the Court is

obligated to calculate the applicable sentencing guidelines range and to consider that range,

possible departures under the Sentencing Guidelines, and other sentencing factors under

18 U.S.C. Section 3553(a)."  (*Id.* at 2.)  He confirmed his plea was not the result of any

promise, threat, or other inducement outside of the plea agreement itself.  (*Id.* at 3.)  He

confirmed his understanding that, by pleading guilty, he was admitting to the facts as set

forth in the Indictment and to committing the offenses with which he was charged.  (*Id.* at 4.)

Further, he acknowledged yet again that he had "discussed these matters with [his] attorney

and [is] satisfied with his representation of [Patel] in these proceedings."  (*Id.* at 3.)

In summary, Patel's signature on each of these documents serves to contradict all of

the allegations set forth in his Motion.

### B. Change of Plea Hearing

The Court's thorough review of these documents with Patel in open court further

discredits his claims.  Before Patel entered a plea of guilty at his change of plea hearing, he

was informed once more of the consequences of his plea, and specifically, his maximum

possible sentence.  As such, even assuming Patel's counsel told him his sentence would be

no longer than ten years, the Court's plea colloquy precludes a determination that counsel

was ineffective.

The Third Circuit "has long held that an erroneous sentencing prediction by counsel is not ineffective assistance where, as here, an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (citing *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001); *Masicola v. United States*, 469 F.2d 1057, 1059 (3d Cir. 1972)).  "[A]ll that the law requires is that the defendant be informed of his/her exposure in pleading guilty.  The law does not require that a defendant be given a reasonably accurate 'best guess' as to what his/her actual sentence will be; nor could it, given the vagaries and variables of each defendant's circumstances and offending behavior."  *Shedrick*, 493 F.3d at 299.

"Thus, where a court's plea colloquy accurately establishes the maximum term of imprisonment that the defendant faces, and advises the defendant that the court has the discretion to impose a sentence outside of the Sentencing Guidelines range and up to the statutory maximum term of imprisonment, a defendant suffers no prejudice from an erroneous sentencing prediction by his attorney."  *United States v. Council*, 2021 WL 1600141, at *4 (M.D. Pa. April 23, 2021) (citing *Shedrick*, 493 F.3d at 299–300).

At Patel's plea hearing, the Government explained the material terms of his plea agreement, including his sentencing exposure:

> Your Honor, Paragraph 1 of the plea agreement indicates that the Defendant has agreed to plead guilty to Count 1 of the indictment, which charges the Defendant with a violation of Title 18 United States Code Section 1349, which is Conspiracy to commit wire and mail fraud.

The maximum penalty for the offense is imprisonment for a period of 20 years, a fine in the amount of $250,000, a maximum term of supervised release of 3 years, which shall be served at the conclusion of and in addition to any term of imprisonment, as well as the costs of prosecution, imprisonment, probation or supervised release ordered, the denial of certain Federal benefits and the assessment in the amount of $100.

The Defendant further agrees to plead guilty to Count 20 of the indictment, which charges the Defendant with a violation of Title 18 United States Code Section 1028 A(a)1, which is aggravated identity theft.

The maximum penalties for the offense [are] a mandatory 24-month term of imprisonment, which, pursuant to statute must be imposed consecutively to Count 1[,] [a] fine in the amount of $250,000, a maximum term of supervised release of one year, which shall be served at the conclusion of and in addition to any term of imprisonment, as well as the costs of prosecution, imprisonment, probation or supervised release ordered, the denial of certain Federal benefits and an assessment in the amount of $100.

. . .

Paragraph 2 of the plea agreement indicates that Count 20 carries a mandatory minimum period of imprisonment of two years.  The mandatory minimum sentence on this count shall be imposed to run consecutively to any other term of imprisonment imposed upon the Defendant.

Paragraph 4 of the plea agreement restates the maximum sentence associated with these crimes and evidences the Defendant's understanding that the total maximum possible sentence for all charges is the combination of penalties described above, that is, 22 years in prison, and/or fines totaling $500,000, 3 years of supervised release, the costs of prosecution, the denial of certain Federal benefits and an assessment totaling $200.

. . .

Paragraph 13 of the plea agreement references an appropriate sentencing recommendation.  At the time of sentencing, the United States may make a recommendation that it considers appropriate, based upon the nature and circumstances of the case and the Defendant's participation in the offense, and specifically reserves the right to recommend a sentence up to and including

maximum sentence of imprisonment and fine allowable, together with the costs of prosecution.

. . .

Paragraph 24 of the plea agreement evidences the Defendant's understanding that the Court is not a party to and is not bound by this agreement or any recommendations made by the parties. Thus, the Court is free to impose upon the Defendant any sentence up and including the maximum sentence, up to and including the maximum sentence of imprisonment for 22 years, a fine of $500,000, a maximum term of supervised release of up to 3 years, which shall be served at the conclusion of and addition to any term of imprisonment, the costs of prosecution, denial of certain Federal benefits and assessments totaling $200.

(Plea H'rg Tr., Doc. 31 at 16–19.) When the Court asked Patel whether terms of the plea

agreement as outlined by the Government were the terms as Patel understood them, he

responded, "Yes, Your Honor." (*Id.* at 20). Finally, the Court explained to Patel how he

would be sentenced:

**THE COURT:** You understand what the maximum penalties are in this case, do you not? You heard Ms. Olshefski outline them.

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Have you and Mr. Brown talked about the sentencing guidelines and how they might apply to your case?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Do you understand that the process here will involve issuance of a Pre-sentence Report from the Probation Office that will be issued to you, Mr. Brown and Ms. Olshefski and to me, and once it's issued to you, you'll have 14 days thereafter within which to make comments on or to make objections to the report?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** You understand that that report will set forth what the guideline range is for imprisonment in this case?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** At the same time, while it does set those guidelines forth, do you understand that I have the authority to impose a sentence that's more severe or less severe than what the guidelines call for?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** You understand that?

**THE DEFENDANT:** Yes, Your Honor.

(Plea Hr'g Tr. at 22–23.)

If there remained any confusion regarding whether the Court was bound by any sentencing prediction by Patel's counsel or alleged off-the-record agreement with the Government, this exchange served to dispel it. The Court's thorough plea colloquy, together with the plea agreement and Acknowledgment, preclude Patel's claim on the grounds that he entered his plea believing he would be sentenced to no more than ten years.

### C. Third Party Affidavits

Patel acknowledges that he was told "that he could be sentenced up to the maximum" at his plea hearing, but argues this is not dispositive. (Doc. 51 at 12.) He contends he is entitled to an evidentiary hearing because he has offered "independent indicia of the likely merit of his allegations." (Doc. 51 at 14 (citing *United States v. Perez*,

17

227 F. App'x 357, 360 (5th Cir. 2007).))  Patel points to three exhibits attached to his supporting brief, labeled "Sworn Affidavit[s]" of Hiteshkumar, Purviben, and Shivani Patel, respectively.  (*See* Docs. 51-1, 51-2, 51-3.)[2]  Purviben Patel is Hiteshkumar's ex-wife, and Shivani Patel is his daughter.

Hiteshkumar Patel cites *Perez* for the principle that "a defendant may seek habeas relief on the basis of alleged promises, though inconsistent with representations [he] made in open court when entering [his] guilty plea, by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise."  *Perez*, 227 F. App'x at 360 (alterations in original).  In *Perez*, the Fifth Circuit reversed a district court's decision to deny an evidentiary hearing when the petitioner presented the affidavits of his wife and his wife's sister-in-law in which each "claim[ed] to have seen [petitioner's attorney] state unequivocally that he was going to get his client a sentence of 24 months."  *Id.*

Indeed, the Third Circuit has recognized a similar principle.  While first noting that "[a] habeas petitioner faces a heavy burden in challenging the voluntary nature of his guilty plea" because "the plea hearing is specifically designed to uncover hidden promises or representations as to the consequences of a guilty plea," *Lesko v. Lehman*, 925 F.2d 1527, 1537 (3d Cir. 1991), the Third Circuit has stated:

---

[2] The Court notes that while these documents are each signed, none of them are notarized.  The trustworthiness usually afforded to an affidavit is therefore lacking with respect to these exhibits.  The Court nonetheless refers to them as "affidavits" for the sake of clarity.

> A petitioner challenging the voluntary nature of a facially valid guilty plea on the basis of unfulfilled promises or representations by counsel must advance specific and credible allegations detailing the nature and circumstances of these statements. See [*Machibroda v. United States*, 368 U.S. 487, 495 (1962)]; [*Blackledge v. Allison,* 431 U.S. 63, 74 (1977)]. A collateral challenge to a guilty plea may be summarily dismissed "when [the petitioner's] allegations of an unkept promise are inconsistent with the bulk of his conduct, and when he offers no detailed and specific facts surrounding the agreement." *Davis v. Butler,* 825 F.2d 892, 894 (5th Cir. 1987).

*Id.* at 1537–38.

Patel's exhibits, however, do not satisfy this standard.  The affidavits merely provide

more evidence of an "erroneous sentencing prediction by counsel." *Shedrick*, 493 F.3d at

299.  Hiteshkumar Patel's affidavit states, in pertinent part,

> On November 9, 2017, the morning of the entry of the guilty pleas, I spoke to Mr. Brown, prior to entering the courtroom about the *likely sentence*, and Mr. Brown reiterated the previous discussion, saying, because I was a minor participant, I would receive a prison sentence of 30–46 months, and in the worst case scenario, ten years at most, and no more than that, because he had spoken to the prosecutor, who was in favor of the lower sentence.

(Doc. 51-1 at 2 (emphasis added).)[3]  Patel alleges "no detailed and specific facts"

surrounding any off-the-record agreement or promise upon which he allegedly relied in

entering his guilty plea.  *Lesko*, 925 F.2d at 1537.  Instead, he describes his counsel's

response to a question about his "likely sentence."  And he attests that his counsel told him

---

[3] Hiteshkumar Patel also attests, "Before entering the [courtroom], Mr. Brown told Petitioner that 'everything would be alright', and that he merely had to go along with the judge[']s plea colloquy."  (Doc. 51 at 6.)  To the extent Patel contends these general statements amounted to a promise of a shorter sentence or otherwise rendered his plea involuntary, those arguments fail in the absence of any evidence that he was ever promised a shorter sentence.

the Government "was in favor of the lower sentence," not that the Government purported to

make any promises or otherwise guarantee that he would receive a lower sentence.

His ex-wife Purviben Patel's affidavit uses the same language:

On November 9, 2017, the morning of the entry of the guilty plea, I accompanied my daughter, Shivani Patel, who spoke to Mr. Brown outside the courtroom, about my ex-husband[']s *likely sentence*, and Mr. Brown told my daughter that because Hiteshkumar was a minor participant, he would receive a prison sentence of 30–46 months, and in the worst case scenario, ten years at most, and no more than that, because he had spoken to the prosecutor, who was in favor of the lower sentence.

(Doc. 51-2 (emphasis added).)

As does his daughter Shivani Patel's affidavit:

On November 9, 2017, the morning of the entry of the guilty plea, I along with my mother, Purviben Patel, spoke to Mr. Brown outside the courtroom, about my father's *likely sentence*, and Mr. Brown told me that because my father was a minor participant, he would receive a prison sentence of 30–46 months, and in the worst case scenario, ten years at most, and no more than that, because he had spoken to the prosecutor, who was in favor of the lower sentence.

(Doc. 51-3 (emphasis added).)  In summary, these affidavits, even if true, serve only to

reiterate that counsel erroneously predicted what Patel's "likely sentence" would be.  He

fails to allege sufficient facts to support that he pleaded guilty "on the basis of unfulfilled

promises or representations by counsel," and he has not satisfied his "heavy burden in

challenging the voluntary nature of his guilty plea."  *Lesko*, 925 F.2d at 1537.

### D. "Scared" into Entering Plea

Patel also claims he was "coerced, [misled], and scared" into accepting his plea,

because counsel told him if he proceeded to trial, "his certain sentence would be fifteen-to-

20 years on each count, followed by consecutive 2-year[] sentences on each Count for Aggravated Identity Theft." (Doc. 51 at 11–12.) He argues further that, had his counsel not "scared him by telling [him] that a jury would favor the [G]overnment over him because of the fact that he was from [I]ndia [and] accused of scamming older Americans, he never would have entered the plea" and instead would have "proceeded to trial and maintained his innocence." (*Id.* at 12.)

Even if counsel gave such advice to Patel, it does not amount to coercion. Advising one's client of the risks of proceeding to trial certainly falls within the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Patel therefore provides insufficient support for his conclusory claims that he was "scared" into pleading guilty by his counsel. On the contrary, the record reflects several affirmations that Patel was not coerced or otherwise induced to plead guilty.

As explained *supra*, both Patel's plea agreement and Acknowledgment affirmed that he had not been threatened or otherwise induced into pleading guilty. (Doc. 18 at 29–30; Doc. 24 ¶ 7.) Moreover, at his plea hearing, Patel stated that he was "very satisfied" with his counsel's representation, and answered in the negative when the Court asked if he had "been threatened" or "forced, in any way, to plead guilty." (Plea Hr'g Tr. at 28, 29.)

Patel's testimony in open court, together with the representations made in his signed plea agreement and Acknowledgement, contradict the claims made in his Motion. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption

of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal[.]" (citations omitted)).  His unsubstantiated allegation that he was scared into pleading guilty is insufficient to rebut the "strong presumption of verity" established by his testimony.  *Id.*

### E. Number of Victims and Loss Calculations

Finally, Patel argues that he would not have pled guilty had his counsel advised him "that the guilty plea would preclude any challenge to the number of victims or loss calculations." (Doc. 51 at 12.)  To the extent Patel argues he did not know that by pleading guilty he was admitting to the facts as recited in the Indictment, this claim is conclusively contradicted by the record.  In the Acknowledgement, Patel affirmed, "I am aware that, by entering a plea of guilty, I am admitting that what the Government says about me in Counts 1 and 20 of the Indictment is true and that I did, in fact, commit the offenses with which I am charged." (Doc. 24 at 4.)

Furthermore, at the change of plea hearing, the Court recited each charge to which Patel pleaded guilty and the respective supporting information from the Indictment.  (Plea Hr'g Tr. at 6–12.)  After reading Count 1, the Court asked whether Patel "underst[oo]d the charges that are set forth against [him] in Count 1," and Patel responded, "Yes, sir." (*Id.* at 10.)  The Court then read Count 20 of the Indictment and again asked Patel whether he "underst[oo]d the allegations against [him] in Count 20," to which Patel responded, "Yes, Your Honor." (*Id.* at 12.)  The Court later explained,

22

> All right, at this point, I'm going to turn back to Ms. Olshefski, Mr. Patel, and I'm going to ask her, if she would, to summarize what the evidence would be against you if this case were to go to trial.
>
> Once again, I'll ask you to listen carefully to what she says, because when she has completed her statement, I'm going to ask you whether what Ms. Olshefski has said is correct, whether you disagree with any part of her statement, and whether you believe, whether you agree that the Government could prove those facts in court by competent evidence beyond a reasonable doubt.

(*Id.* at 23.)  The Government then summarized the evidence against Patel, including the estimated number of victims and the approximate dollar amount of the loss.  (*Id.* at 25–27.) After the Government finished its explanation of the evidence, the Court questioned Patel about the summary:

> **THE COURT:** Mr. Patel, did you listen to Ms. Olshefski outline what the evidence would be against you?
>
> **THE DEFENDANT:** Yes, Your Honor.
>
> **THE COURT:** Is it correct?
>
> **THE DEFENDANT:** Yes.
>
> **THE COURT:** Do you disagree with any part of Ms. Olshefski's statement?
>
> **THE DEFENDANT:** No.
>
> **THE COURT:** Do you agree that the Government could prove those facts in court beyond a reasonable doubt?  You have to say yes or no, sir.
>
> **THE DEFENDANT:** Yes, Your Honor.

(*Id.* at 27.)

In any event, Patel cannot successfully argue he was unaware that pleading guilty would "preclude any challenge to the number of victims or loss calculations," because such challenge was not actually precluded. Indeed, his counsel filed objections to the PSR and objected to the amount of loss attributed to him at the sentencing hearing. (*See* Doc. 38 at 7–9.) For this reason and all of those set forth above, his claim for relief will be denied.

## VI. EVIDENTIARY HEARING

Section 2255(b) advises that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The decision to hold a hearing is wholly within the discretion of the district court." *Eckenberger v. United States*, 2022 WL 609208, at *5 (M.D. Pa. March 1, 2022) (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). In this case, no evidentiary hearing is necessary because "the motion and files and records of this case show conclusively that the movant is not entitled to relief." *Id*. (internal quotations and citations omitted)).

## VII. CERTIFICATE OF APPEALABILITY

"A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate of appealability ['COA']." *United States v. Bristol*, 2022 WL 2068048, at *8 (E.D. Pa. June 8, 2022) (citing 28 U.S.C. § 2253(c)(1)). The petitioner must make a "substantial showing of

the denial of a constitutional right" for the district court to issue a COA, which requires a

showing that "reasonable jurists would find the district court's assessment of [his]

constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529

U.S. 473, 484 (2000). In this case, a COA is not warranted for Patel's claim because the

Court finds that reasonable jurists would not find this Court's resolution of Patel's

constitutional claim debatable or wrong.

## VIII. CONCLUSION

For the aforementioned reasons, the Court will deny Patel's *pro se* Motion Pursuant

to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 46).[4]  A separate

Order will follow.

---

[4] The Court will also deny Patel's Motion for Appointment of Counsel.  (Doc. 85.)  A defendant does not possess a constitutional right to the appointment of counsel in a habeas proceeding.  *See Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991) ("There is no 'automatic' constitutional right to counsel in a federal habeas corpus proceeding"), *superseded on other grounds by statute*, 28 U.S.C. § 2254(d); *Gov't of Virgin Islands v. Warner*, 48 F.3d 688, 692 (3d Cir. 1995) ("A prisoner's rights in a habeas corpus proceeding are more limited than on direct appeal.  For example, the Supreme Court has determined that while the Constitution guarantees the right to counsel on direct appeal, it does not guarantee the right to counsel in a habeas petition.").

As the Supreme Court has explained:

In most federal courts, it is the practice to appoint counsel in post-conviction proceedings only after a petition for post-conviction relief passes initial judicial evaluation and the court has determined that issues are presented calling for an evidentiary hearing. E.g., *Taylor v. Pegelow*, 335 F.2d 147 (C.A.4th Cir. 1964); *United States ex rel. Marshall v. Wilkins*, 338 F.2d 404 (C.A.2d Cir. 1964). *See* 28 U.S.C. § 1915(d); R. Sokol, A Handbook of Federal Habeas Corpus 71–73 (1965).

It has not been held that there is any general obligation of the courts, state or federal, to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief. *See, e.g., Barker v. Ohio*, 330 F.2d 594 (C.A.6th Cir. 1964). Accordingly,

Robert D. Mariani
United States District Judge

_____

the initial burden of presenting a claim to post-conviction relief usually rests upon the indigent
prisoner himself with such help as he can obtain within the prison walls or the prison system.

*Johnson v. Avery*, 393 U.S. 483, 487–88 (1969). *See also McCleskey v. Zant*, 499 U.S. 467, 495 (1991)
(reiterating that there is no constitutional right to counsel in federal habeas corpus) (citing *Pennsylvania v.
Finley,* 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and
no further")), *superseded on other grounds by statute* as stated in *Banister v. Davis*, 140 S. Ct. 1698, 1707
(2020); *Williams v. Pennsylvania*, 579 U.S. 1, 35 (2016) ("The postconviction petitioner has no
constitutional right to counsel.") (citing *Finley*, 481 U.S. at 555–57; *Johnson*, 393 U.S. at 488) (Thomas, J.,
dissenting).

Further, a defendant's statutory right to the appointment of counsel in § 2255 proceedings is
limited. A court may appoint counsel if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). In
determining whether a petitioner is entitled to counsel, "the district court must first decide if the petitioner
has presented a nonfrivolous claim and if the appointment of counsel will benefit the petitioner and the
court. Factors influencing a court's decision include the complexity of the factual and legal issues in the
case, as well as the pro se petitioner's ability to investigate facts and present claims." *Reese*, 946 F.2d at
263–64.

Here, the Court having determined that the issues presented do not call for an evidentiary hearing,
and that the interests of justice do not otherwise require the appointment of counsel, Patel's Motion will be
denied.